**IN THE COURT OF APPEALS OF IOWA**

No. 14-0857
Filed March 25, 2015

**IN RE THE MARRIAGE OF KARLA J. BEVERS
AND ANTHONY J. BEVERS**

**Upon the Petition of
KARLA J. BEVERS,**
        Petitioner-Appellant,

**And Concerning
ANTHONY J. BEVERS,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Dickinson County, Carl J.

Petersen, Judge.


        Karla Bevers appeals the dissolution of marriage decree granting joint

physical care.  **AFFIRMED AS MODIFIED.**


        John L. Sandy of Sandy Law Firm, P.C., Spirit Lake, for appellant.

        William H. Larson of Klass Law Firm, L.L.P., Sioux City, for appellee.


        Heard by Danilson, C.J., and Potterfield and Bower, JJ.

**BOWER, J.**

Karla Bevers appeals the district court's dissolution decree granting her and her former spouse, Tony Bevers, joint physical care of their two minor children. Based on our de novo review, we agree with the district court that joint physical care is appropriate as it will allow the children to have the maximum amount of contact with each parent and is in their best interests. We affirm the judgment of the district court, but modify the visitation provision to allow the parent without the children the right to care for the children should the parent with the children be unavailable for four or more hours.

## I.    BACKGROUND FACTS AND PROCEEDINGS

Karla and Tony were married in 1999. The parties have two children, who were seven and five years old at the time of trial. We incorporate the district court's background findings of the couple:

> The parties have moved on several occasions during the term of the marriage. Karla received her BS in elementary and special education in 2000. Tony received his associate's degree in agriculture at approximately that same time period. Initially after graduation the parties concentrated on Karla's career wherein she started her teaching career at the Iroquois school near Huron, South Dakota, working two years in the reading program. The parties then moved to Harrisburg, South Dakota, to allow Karla to work for the Cornbelt Education Cooperative. During that time period, Tony began his interest in technology and worked for an office supply company near Huron, South Dakota. Tony began his own business when the parties moved to Harrisburg, South Dakota. Also during that time period Tony began a four-year degree process through Colorado Technical University graduating in 2006. In 2008 Tony obtained a job at the Watertown School District and moved to Watertown to begin that employment. Karla remained in the family home in Harrisburg from February of 2008 until August of 2008. Thereafter Karla obtained an elementary position with the Watertown School District, and the parties moved and eventually purchased a home in Castlewood, South Dakota. Again, then in

July of 2011, Tony obtained employment with the Sibley-Ocheyedan School District as a technology director, and Karla remained in Watertown from July 2011 to January 31, 2012. Thereafter Karla moved to the acreage in George, Iowa, with the children.

The marriage began to breakdown in 2012. Tony testified that verbal altercations between the couple began on an increasingly frequent basis. During this time, Karla claimed Tony's behavior changed and he became secretive. Karla perceived Tony as a threat to her and the children. At trial, Karla recounted two incidents (which Karla recorded the audio of on her phone[1]) she claimed evidenced the toxic nature of the couples' relationship and its negative emotional impact on the children. Karla received counseling from a domestic abuse agency to create a "safe house plan" for her and the children if needed.

The parties separated on May 24, 2013. On that date, without informing Tony, Karla picked up the children from school and did not return to the family home. Tony contacted Karla multiple times to find out where the children were. Karla responded the children were with her and they were fine. Karla did not allow Tony to see the children or disclose their location, for the next three weeks. Tony was allowed to see the children on Father's Day weekend. Then, Karla did not allow him to see the children until the court made its determination at the temporary custody hearing, several days later.

The district court entered a temporary custody order on July 3, 2013. The court found Karla's allegations of abuse by Tony were fabricated. The court found Karla had denied even minimal contact between the children and Tony

---

[1] The district court did not consider the two recordings as reliable evidence at trial. The court likened Karla's act of recording Tony to entrapment.

from the end of May through the date of the temporary custody hearing. As a result of Karla's actions, the district court granted Tony immediate and substantial contact with the children consisting of full custody of the children from July 5 through August 4.

The dissolution trial was held on December 17, 2012 and January 13, 2014. The parties each testified at the trial and presented multiple witnesses to speak to their fitness as parents. The district court found the testimony of these witnesses carried varying degrees of credibility. Of the witnesses presented, the court found the testimony of the Tony's mother, Pauline, and Tony's sister, Cory, persuasive and stated:

> Again, the Court notes the significance of the testimony of Pauline and Cory compared to the other testimony wherein Karla is sharing intimate details of her marriage. In those statements Karla does not in any way set forth that Tony is a threat of violence to herself or the children. However, she does relay many other very sensitive issues such as affairs and lack of intimacy between her and Tony. This is consistent with her statements to other individuals including her friends and daycare providers. This is a significant fact in that it demonstrates that Karla completely fabricated the grounds to separate and remove the children from Tony's care without providing Tony any contact with the children for an extended period of time.

The court also considered the testimony of mental health therapist Stacey Ahrenstorff and her counseling of the Bevers children. Ms. Ahrenstorff and the children met individually for eight sessions. On average, the sessions lasted for approximately fifty minutes. Ms. Ahrenstorff testified about how the children were coping with their parent's divorce. She noted both of the children were diagnosed as having an "adjustment disorder." She stated this occurs when "there's a family breakdown and there's two households that [the children] have

to share their time between, there is an adjustment period." Ms. Ahrenstorff opined the best arrangement for the children would be a "more typical one" where the mother has physical care, and a joint physical care arrangement would continue to make the children feel unstable. However, she did state, based on her counseling sessions with the children, they "both love [dad], and they do want to spend time with him." Ms. Athrenstorff's testimony was diminished, to some extent, by the fact her services were initiated by Karla and she only communicated with Karla. On this point, the court stated:

> On whole, Ms. Ahrenstorff's information is beneficial to the Court; however, it is not significant because of the lack of involvement of Tony in the opinion. To assert an opinion of custody without involving the father is limited at best. The Court does not understand why a professional would call the child's teacher to discuss the child's interaction in the school setting, but not reach out to the father to discuss behavior in the father's home. Therefore, Ms. Ahrenstorff's opinion carries less weight than could be considered if her evaluation was to the entire family.

The district court entered the dissolution decree on May 7, 2014. The decree granted the parties joint legal custody and joint physical care. The decree also set a visitation schedule requiring the parties to alternate caring for the children on a weekly basis, the party without physical care during the week was allowed an overnight visit on Wednesday. Each party was granted one two-week period during the summer months with the children. Finally, the decree listed the parties' agreement that "should either parent be unavailable to care for the children during his or her parenting time with the children for a period of eight hours or longer" the parent without the children should have the right to care for

the children during that time before alternate arrangements were made. Karla now appeals.

## II.   STANDARD OF REVIEW

We review dissolution of marriage cases do novo. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We have a duty to examine the entire record and adjudicate anew the rights on the issues properly presented. *In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). Generally, we give considerable deference to the district court's credibility determinations because the court has a firsthand opportunity to hear the evidence and view the witnesses. *In re Marriage of Brown*, 487 N.W.2d 331, 332 (Iowa 1992).

## III.   ANALYSIS

The sole issue on appeal concerns the physical care provision of the parties' dissolution decree granting the parties joint physical care of the two children. Karla claims she was the primary caregiver during the marriage, and joint physical care is not in the best interests of the children. Iowa's traditional and statutory child custody standard is "the best interest of the child." Iowa Code § 591.41(1)(a) (2013); *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). This standard provides the necessary flexibility to take the unique facts of each case into consideration. *Hansen*, 733 N.W.2d at 696. The Iowa Code provides a non-exclusive list of factors to be considered in determining a custodial arrangement that is in the best interest of a child. Iowa Code § 598.41(3); *Hansen*, 733 N.W.2d at 696. The goal is to assure the child "the opportunity for the maximum continuing physical and emotional contact with both

parents after the parents have separated or dissolved the marriage." Iowa Code § 598.41(1)(a). We seek to place the child in the environment "most likely to bring [the child] to health, both physically and mentally, and to social maturity." *Hansen*, 733 N.W.2d at 695.

In *Hansen*, our supreme court outlined four non-exclusive factors to consider in deciding whether joint care is appropriate. *Hansen*, 733 N.W.2d at 696–700. Those factors include: (1) the stability and continuity of care-giving for the child, (2) the ability of the parents to communicate and show mutual respect, (3) the degree of conflict between the parents, and (4) the degree to which the parents generally agree about their approach to daily child-rearing matters. *Id.*

In this case, after our review of the record, we agree with the district court's comprehensive analysis of the *Hansen* factors and find the circumstances in this case weigh in favor of the parents retaining joint physical care of the children.

Concerning "stability and continuity," the court found the evidence supported a conclusion Karla had (historically) been the primary caretaker of the children. The court conditioned its conclusion by noting Tony had been a substantial participant in the care of the children except during the brief periods when he resided out of the home due to work commitments.[2] The court found

---

[2] In February 2008, Tony moved from Harrisburg, South Dakota to Watertown, South Dakota, for a new position as an IT director and a $25,000 salary increase. Tony testified the move was necessary to remedy the family's financial problems. Karla later moved to Watertown in August 2008 after she obtained a teaching position at an elementary school. In July 2011, Tony moved to his present residence in George, Iowa for a more lucrative position at the Sibley-Ocheyedan School District. Karla later moved

Tony's witnesses credible when they testified about the children adjusting to the change from one household to two. Aside from minor concerns raised by Karla, the record does not show any issues with the joint physical care arrangement in the time since the separation. We find the record shows the children have been coping well with their parents' divorce, in light of the circumstances.

The court found some minor problems with the issues of communication, ability to show respect, and degree of conflict; but none weighing against the joint physical care arrangement. The court concluded there was no domestic violence between the couple or toward the children.[3] Based on the testimony presented, the court found Karla fabricated the conflict in an effort to undermine a joint physical care arrangement. The court also found Karla made an effort to hinder the couples' ability to communicate by minimally responding to Tony's requests

---

to George in January, 2012. During this period, Tony returned to Watertown every weekend to assist in caring for the children.

[3] The court made the following findings/conclusions concerning Karla's actions in this case:

> The Court is concerned that if Karla was the primary physical care provider that she would undermine and affect Tony's relationship with the children. This is clearly evidenced by her poor judgment in absconding with the children from the family home without telling Tony. For several weeks she would not identify where they were residing and would not allow the children to talk to Tony. This was done so without any evidence of domestic or physical violence. Again, the Court provides no weight to the audiotapes in which Karla entrapped Tony into an argument and feigned domestic and physical violence. Further, this lack of evidence is corroborated by the fact that Karla before and after the divorce did not report to intimate friends, family and counselors that Tony was a threat of physical violence or domestic abuse to her. Clearly, she was aware that domestic violence would be a detrimental factor for Tony's request for shared physical care, and she decided that she would fabricate this fact to insure her own custody. She was aware at the time of the separation that Tony wanted shared physical care and took steps to avoid that. Therefore, the Court concludes that Karla would undermine Tony's relationship with the children. This is further evidenced by the limited visitation that she proposes in this case.

to coordinate the care of the children. The court reasoned if Karla was granted primary physical care of the children she may continue to be non-communicative toward Tony and disrupt his relationship with the children. We agree with the court's assessment that without a joint physical care arrangement Karla would likely strive to limit Tony's time with the children.

Finally, concerning the fourth factor, the court found the parties had similar views on child rearing. While there is sparse evidence addressing the parents' views on child rearing, the evidence does not reveal any significant disputes between the couple on how best to raise the children. We agree with the court's evaluation of this factor and find the lack of dispute between the parents on child rearing supports a finding for joint physical care.

Based on our de novo review, we agree with the district court that joint physical care is appropriate in this case. The first *Hansen* factor is overcome by compelling evidence demonstrating the long term best interests of the children. Joint physical care will allow the children to have the maximum of amount of contact with each parent. Though, we elect to amend one element of the parties' visitation agreement. The divorce decree grants the party without the children that week the first opportunity to care for the children should the party with care of the children be unavailable for eight hours. We find the eight hour requirement should be changed to four hours. Since Carla is a teacher and does not work during the summer months, and Tony works full time year-round, Carla should be allowed to care for the children during the day when the children are out of school for summer vacation. Tony is agreeable to this idea and it will allow the

parties to save money on childcare expenses.  Section (4) subsection (s) of the

divorce decree should be modified to state the following:

> The parties agree that should either parent be unavailable to care for the children during his or her parenting time with the children for a period of *four hours* or longer, that the parent shall have first contact with the other parent and allow him or her the right to care for the children during the time before making alternate arrangements

**AFFIRMED AS MODIFIED.**